UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 08-11

TIMOTHY G. COLLINS, PLAINTIFF,

V.         **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") (R. 8, 9). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I.     Overview of the Process

Judicial review of the decision of an Administrative Law Judge ("ALJ") to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir.

1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

II.     **The ALJ's Determination**

At the time of the alleged disability onset date, the plaintiff was a forty-year-old male with less than a high-school education. AR 17. He alleges disability beginning on March 1, 2003, due to pain in his left knee subsequent to total-knee-replacement surgery and depression. AR 11. The plaintiff filed his claim for DIB on

September 7, 2005.  AR 11.  The claim was denied initially on February 9, 2006, and again upon reconsideration on June 12, 2006.  AR 117, 11.  A hearing was held on May 23, 2007, before Administrative Law Judge ("ALJ") Frank Letchworth, and on September 10, 2007, the ALJ issued his decision.  AR 27.

At Step 1, the ALJ found that the plaintiff had not engaged in substantial gainful activity from the alleged disability onset date through July 11, 2006.  AR 11.  The ALJ determined that as of July 12, 2006, through the date of the decision, plaintiff was able to perform substantial gainful activity.  AR 11.  At Step 2, the ALJ found that during the time he was disabled, the plaintiff's history of total left knee replacement, depression, and a reading disorder established severe impairments.  AR 14.  The ALJ then determined that these impairments did not meet or equal a listing in the Listing of Impairments at Step 3.  AR 16.

To assess the plaintiff's claim at Steps 4 and 5, the ALJ found that the plaintiff did not have the residual functional capacity ("RFC") to perform even sedentary work, as he was unable to stand or walk for the requisite two hours during an eight-hour day required to perform sedentary work.  AR 16-17.

At Step 4, the ALJ found the plaintiff unable to  perform his past relevant work as a janitor.  AR 17.  Finally, at Step 5 the ALJ determined that given the plaintiff's age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that the plaintiff could perform from March 1, 2003 through July 11, 2006.  AR 17.  The ALJ therefore concluded that during

that time period, the plaintiff was "disabled."

The ALJ determined that as of July 12, 2006, plaintiff had experienced significant medical improvement such that he was no longer disabled. AR 18. Repeating steps 4 and 5 for the period of time beginning on that date, the ALJ concluded that as of that date, plaintiff had the RFC to perform light work[1] that requires only following simple one- or two-step instructions and for which reading is not necessary. AR 18. The ALJ determined that the plaintiff remained unable to perform his past relevant work. AR 20. However, the ALJ concluded that based on the plaintiff's age, education, work experience, and current RFC, a significant number of jobs exists in the national economy that the plaintiff is capable of performing. AR 20.

The ALJ denied the plaintiff's claim for DIB for July 12, 2006, through September 10, 2007. The plaintiff appealed to the Appeals Council. AR 5. The Appeals Council denied his request for review on November 15, 2007, and the plaintiff commenced this action. AR 2.

**III. Legal Analysis**

The plaintiff disagrees with the ALJ's finding that he was no longer disabled as of July 12, 2006. He argues that this part of the ALJ's decision was not

---

[1]The ALJ specified that the plaintiff could perform only light work that allows him to alternate between sitting and standing every thirty minutes; that does not require any climbing of ladders, ropes, or scaffolds, crawling, squatting, or kneeling; and that does not require more than occasional stooping, bending, or crouching. AR 18.

supported by substantial evidence. Specifically, he argues that: (1) the ALJ erred in relying on the 2006 report by Dr. Christensen and (2) the ALJ improperly rejected the opinions of the government psychologists, Drs. Bennett and Freudenberger. The court will consider these arguments in turn.

**A.    Substantial Evidence Supports ALJ's Determination of Medical Improvement**

The plaintiff contends that the ALJ erred in relying on the findings of Dr. Christensen, as these findings were contradicted by the later reports of Drs. Echeverria, Stewart, and Hoskins.[2] As discussed in greater detail below, the ALJ relied only in part on Dr. Christensen's assessment – he also relied on the more limiting assessments of these other doctors. The plaintiff further argues that the ALJ improperly rejected the assessment of Dr. Echeverria, one of the plaintiff's treating physicians. The court finds that the ALJ properly considered these doctors' opinions and that his determination is supported by substantial evidence.

In making his determination, the ALJ relied on the findings of Dr. Christian Christensen, a treating physician, as well as on the examinations of two consultative physicians, Dr. Kevin Croce and Dr. Daniel Stewart. Dr. Christensen

---

[2]To the extent that in making this critique the plaintiff has argued that the ALJ should have granted more weight to the opinion of Dr. Robert Hoskins, this argument fails. Dr. Hoskins was a consultative physician. The opinion of a consulting physician is not entitled to the deference due the opinion of a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). In rejecting Dr. Hoskins's opinion, the ALJ noted that Dr. Hoskins examined the plaintiff only once, and only for a "social security examination." *See* AR 19. The ALJ thus appropriately explained his decision to disregard Dr. Hoskins's opinion.

was the physician who performed the plaintiff's knee surgery.  On July 12, 2006, he reported that the plaintiff's gait was normal and pain was the same.  AR 371.  In September of 2006, Dr. Christensen's Physician's Assistant (PA), Brad Robertson, completed an assessment of the plaintiff, finding that the plaintiff was nearly unlimited in his physical abilities.[3]  *See* AR 404-06.

A treating physician's opinion is entitled to substantial deference when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Dr. Christensen's opinion is supported by his clinical notes and exams.  An x-ray from April of 2006 showed the knee with an "unchanged position . . . with no signs of loosening," normal alignment, and no joint effusion.  AR 321.  According to the findings of an x-ray taken of the plaintiff's knee on July 14, 2006, it had "near normal alignment.  There are no signs for complications."  AR 369.  This evidence therefore supports the ALJ's determination that the plaintiff's condition improved

---

[3]The plaintiff does not argue that a report prepared by a physician's assistant is not entitled to the same weight as a report prepared by the physician himself, and so the court will consider the opinions in the report as those of the treating physician.  The plaintiff does note that Dr. Hoskins remarked in his own report that the September 2006 assessment by Dr. Christensen "was stamped by the physician's assistant with Dr. Christensen's name printed on it."  *See* R. 8, p.8 (quoting AR 390).  The plaintiff goes on to state that "Dr. Hoskins believed this 'indicate[d] it was filled out by the physician['s] assistant, but probably does *not* reflect the wishes of the orthopedic surgeon."  *Id.* (emphasis added).  The plaintiff misquoted Dr. Hoskins.  Dr. Hoskins actually wrote that the report "was filled out by the physician['s] assistant, but probably *does* reflect the wishes of the orthopedic surgeon."  AR 390 (emphasis added).

as of July 12, 2006.

Although the ALJ ultimately concluded that the plaintiff was no longer disabled as of July 12, 2006, he also determined that the plaintiff remained more limited in his abilities than as determined in Dr. Christensen's assessment of September, 2006. Thus, while the plaintiff rightly points out that later reports assess the plaintiff as being more limited than did Dr. Christensen's report, the ALJ's own determination was consistent with and is supported by these later reports.[4] Dr. Croce examined the plaintiff on January 21, 2006, and found that the plaintiff has a "mild impairment from activities related to standing for long periods of time, walking for long periods of time, and activities that include fine balance, climbing, squatting, quick lateral movements, and multiple repetitive movements involving his left knee." AR 263.

The report of Dr. Daniel Stewart also supports the ALJ's determination. On February 10, 2007, Dr. Stewart noted that "[b]ased on the history, physical exam, and provided medical documentation, [the plaintiff] appears to have mild limitations regarding the use of his lower extremity in repetitive movements." AR. 379. Dr. Stewart concluded that the plaintiff had mild limitations in his ability to drive or to

---

[4]According to the September 2006 assessment, the plaintiff was unlimited in his ability to stand, walk, or sit, could lift or carry "as pain allowed," was unlimited in physical functions (reaching, handling, feeling, pushing/pulling, seeing, hearing, speaking), and had no environmental restrictions. AR 404-05. The assessment included limitations only in the plaintiff's ability to kneel or crawl on hard surfaces. AF 405. As iterated above, the ALJ's assessment of the plaintiff's residual functional capacity includes considerably more limitations.

stand for extended periods of time, as well as mild limitations in ability to walk for long distances. AR 378-79. Dr. Stewart noted "incongruity between the plaintiff's stated symptoms and his physical exam findings." AR 379. The ALJ's assessment reflects the limitations found by these doctors.

The plaintiff contends that the ALJ rejected the opinion of Dr. Jose Echeverria, one of the plaintiff's treating physicians, without providing sufficient reason. The opinion of a treating physician is entitled to deference, and the ALJ must set forth a reasoned basis for rejecting it. *See Wilson*, 378 F.3d 541, 546 (6th Cir. 2004). Here, the ALJ did explain why he determined that the plaintiff was not as physically limited as Dr. Echeverria reported:

> Dr. Echverria [sic] is a treating physician, but I note that his opinions were rendered only a few days after the claimant presented for treatment with an antalgic gait and walking with a cane because he had fallen at home a few days prior. Dr. Echverria's [sic] opinions are also lessened when one considers that if, in fact, the claimant is unable to stand/walk for <u>any</u> length of time during an 8 hour day [as opined by Dr. Echeverria], then he would not have been able to walk into 2 separate hearings. Both Dr. Echverria['s] [sic] and Dr. Hoskins'[s] opinions are contradicted by Dr. Christensen's findings on examination, as well as Dr. Echverria's [sic] recent findings on examination, which include only mild swelling and subjective tenderness. I also note that after November 2006, Dr. Echverria [sic] has made no note that the [plaintiff] requires or uses a cane.

AR 19-20.

The plaintiff emphasizes that the ALJ improperly disregarded the medical evidence based on his own observations of the plaintiff. However, an ALJ can consider his own observations of the plaintiff as evidence of the plaintiff's ability to

8

function.[5]  *See Birdwell v. Barnhart*, 2008 WL 2414828, at *11 (although ALJ cannot reject the plaintiff's subjective complaints of pain based solely upon failure to observe "outward manifestations of pain during an administrative hearing," the ALJ's observations are relevant where combined with ALJ's examination of the record as a whole); *Roddy v. Comm'r of Social Sec.*, 2008 WL 820141, at *6 (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001))("[T]he ALJ properly considered his own observations in making a credibility finding."); *see also Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in light of his claim of disabling pain.").  Furthermore, the ALJ's rejection of Dr. Echeverria's decision was also based on several other pertinent factors.  In particular, the ALJ references the proximity of Dr. Echeverria's examination to a major fall and the opinions expressed in his reports of the plaintiff's follow-up visits.

These reports support both the ALJ's specific decision to reject Dr. Echeverria's assessment and his general conclusion that the plaintiff was no longer disabled as of July 12, 2006.  On July 21, 2006, Dr. Echeverria noted that the plaintiff's knee pain was "partially controlled."  AR 359.  While there was swelling, there was no effusion or sign of secondary infection.  *Id.*  On November 6, 2006, the plaintiff visited Dr. Echeverria after a fall, but Dr. Echeverria's treatment notes

---

[5]The plaintiff appeared before ALJ Letchworth in January of 2007 as well as in May of 2007.  The January hearing was continued to allow the plaintiff to submit additional evidence.  AR 11.

of November 16, 2006, report that the plaintiff was "much improved." On March 14, 2007, Dr. Echeverria noted that although the plaintiff complained of "severe left knee pain," there was "good control with medications prescribed." AR 411. Similarly, on May 11, 2007, Dr. Echeverria noted "left knee pain," but made no notations consistent with a finding of the plaintiff being unable to sit or stand at all during an eight-hour work day. AR 409.

**B.      The ALJ Properly Considered the Opinions of the Agency's Psychologists**

To aid his determination of whether jobs existed in the national economy that the plaintiff was capable of performing, the ALJ elicited the expert opinion of a Vocational Expert (VE). The plaintiff argues that the hypothetical question posed by the ALJ to the VE was inaccurate because it failed to include mental health limitations assessed by the government's mental health sources, Dr. Larry Freudenberger and Dr. Jeanne Bennett.[6]

Dr. Freudenberger prepared his assessment on May 16, 2006, and Dr. Bennett prepared hers on April 23, 2006. The defendant points out that both of the reports therefore were prepared based on examinations made during the time that the ALJ determined that the plaintiff was disabled. However, the plaintiff's mental health limitations as of April and May of 2006 remained relevant to the ALJ's assessment of the plaintiff's abilities after July of 2006, especially as the

---

[6]Another mental health source, Barbara Belew, determined that the plaintiff was much more limited in his mental ability to function. *See* AR 391-400. The court rejected this source's opinion, and the plaintiff does not argue that the ALJ did so improperly.

10

record contains no evidence of any mental health examination between May 16, 2006, and July 12, 2006.  However, it is not entirely clear that the ALJ's assessment or his hypothetical question actually did fail to reflect the findings of these two sources.

   Dr. Bennett found that the plaintiff had no impairment to his capacity to "understand, remember, and carry out instructions toward the performance of simple repetitive task" and only "slight limitations" in his ability to "sustain attention and concentration towards the performance of simple repetitive task." AR 328-29.  She further concluded that he had moderate limitations in his ability to tolerate stress and pressure of employment but no problems in responding appropriately to supervision, coworkers, and work pressures.  AR 328-29.  Dr. Freudenberger's assessment found moderate limitations in only two categories: "the ability to maintain attention and concentration for extended periods of time" and "the ability to respond appropriately to changes in the work setting."  AR 345-46.  Dr. Freudenberger concluded that overall the plaintiff was able to "understand, recall, and persist for simple tasks," "socially function in full time work setting," and "adapt to routine changes."  AR 347.

   The ALJ included in his assessment that the plaintiff is limited to "simple 1-2 step instructions, and he cannot perform jobs in which reading is an essential job element."  AR 18.  This assessment of the plaintiff's ability to concentrate and perform tasks reflects the conclusions of Drs. Bennett and Freudenberger, and the

11

ALJ included it in the hypothetical question he posed to the VE.  *See* AR 45-46.

### IV. Conclusion

In summary, substantial evidence supports the ALJ's conclusion that the plaintiff could perform other work and was not disabled under the meaning of the Social Security Act.

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (R. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (R. 8) is **DENIED**.

Signed on   January 26, 2009



JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY